H. C. RILEY and LIVINIA BEACH v. H. H. O'KELLY, JACE FISHER and JOHN PIGG; H. H. O'KELLY and JACE FISHER, Appellants.

Division One, May 31, 1913.

1. TITLE: Common Source: Assumed. In actions to quiet title and in ejectment, where the adversary parties hinge their title upon that of a common grantor or ancestor, the only issue is which of them acquired that title; and the case will be determined on the theory of a common source of title, if a common ancestor is proved, admitted or assumed.

2. ————: ————: How Assumed and Conceded. Where the evidence shows that the title vested in John Q. Cormack in 1858, who died in 1865, defendant both assumed and conceded a com-

mon source of title by offering a deed from John J. Cormack to defendant, dated in 1909, upon the theory, as defendant's counsel announced, that "there is no evidence to show that John J. Cormack is not an heir of John Q. Cormack, who entered this land," and by asking an instruction reciting that "one John Cormack obtained title to the land in 1858" and "the deed offered in evidence by defendant to himself from John Cormack makes a *prima facie* case that defendant is the owner of said land."

3. ————: **Demurrer to Evidence: Waived.** Defendants waive their demurrer to plaintiffs' evidence, if after it is offered and overruled, they put in evidence of their own; and, though plaintiffs' case at its close does not show title in them, yet if defendants put in evidence which show they attempt to claim through a common source, but fails to show that any of them acquired any interest from the common ancestor, they cannot complain that the court overruled their demurrer to plaintiffs' case interposed at the close of the entire case, if that evidence shows plaintiffs have acquired the title of the common source.

4. **SWAMP LANDS: Register's Books as Evidence: Statute Requiring Governor to Transmit Certificates.** Whether or not the original books kept by the land register and receiver of public moneys of the county from swamp lands are admissible in evidence, in view of the statute requiring the Governor, after November 4, 1857, to transmit the certificates issued by such officers to the counties, which thereafter were empowered to patent such swamp lands, is adverted to, but not decided in this case, because the decision of that point is not necessary to a proper disposition of the case.

5. **ATTORNEY: Power to Represent Party.** The power of a duly licensed and practicing attorney to represent one of the plaintiffs in whose name he has brought the suit, is presumed until challenged in some adequate way—by motion supported by affidavit if made by defendant—and the burden of disproving the existence of such authority is upon the party making the challenge, unless the client has denied the authority, in which case the burden is on the attorney to establish it.

Appeal from Pemiscot Circuit Court.—*Hon. Robert G. Ranney,* Special Judge.

AFFIRMED.

*Ward & Collins* for appellants.

(1)   The court erred in rejecting competent evidence offered by defendants.   The defendant H. H.

O'Kelly offered a warranty deed to the land in controversy, made to him on the 26th day of January, 1909, by one John J. Cormack, consideration $500; duly acknowledged and recorded. Of course, since plaintiff showed no title, the demurrer ought to have been sustained and judgment rendered for the defendants, or at least plaintiffs' case dismissed, but the defendant had a right to show that he was a bona-fide claimant to this land under a warranty deed since plaintiffs had charged in their petition that defendant claimed some right, title or interest in this land, the nature and character of which was unknown to plaintiff. And since plaintiff had shown no title it was wholly immaterial whether defendant connected a chain of title back from his grantor to the Government or not, there being no common source assumed, agreed upon or proven. The defendants had demurred at the close of plaintiffs' case and that demurrer being overruled they were entitled to show that they had some claim to this land and show what that claim was. (2) The court erred in refusing defendants' demurrer and in giving the peremptory instruction for plaintiff at the close of the whole case. There is absolutely no proof of title in plaintiffs, but the showing made puts the title in Pemiscot county, but it absolutely fails to get the title out of Pemiscot county. Whitman v. Geising, 224 Mo. 616. Of course, if plaintiffs had shown that John Q. Cormack purchased the land from Pemiscot county, and paid for same, then his heirs would have an equitable title to this land; but to do this, plaintiffs must have shown the following: (a) That John Q. Cormack selected this land and purchased it, and obtained a register's certificate therefor. (b) That he took the register's certificate and presented it to the receiver of land and paid the money (not less than $1.25 per acre) and obtained a receiver's receipt therefor. (c) Then, with the register's certificate and receiver's receipt, he could have applied to the register of land

at Jefferson City and obtained a patent. This he did not do. Laws 1855, p. 154; Nall v. Conover, 223 Mo. 477; Whitman v. Geising, 224 Mo. 660; Bishop v. Bloker, 235 Mo. 618; Hunter v. Pemiscot L. & C. Co., 246 Mo. 135. (3) Respondents cannot claim in this case that there was a common source of title. Of course, if there was a common source of title agreed upon, assumed or proven, then the defects in the title prior to the common source would be defects common to both titles, plaintiffs' and defendants', and neither could take advantage of it. Machine Works v. Bowers, 200 Mo. 235; Stewart v. Land Co., 200 Mo. 291; Charles v. White, 214 Mo. 211; Gage v. Cantwell, 191 Mo. 698; Nall v. Conover, 223 Mo. 477. There is no common source of title either assumed by the above parties, or admitted or proven. Then under Sec. 2535, R. S. 1909, in the suit to ascertain and quiet title, plaintiff if he relies upon his paper title must prove his interest in the land by a continuous chain beginning with the Government. Nall v. Conover, 223 Mo. 477. Now in this case the record shows that there was no common source of title agreed upon, neither was any common source of title assumed, nor was there any common source of title proven. Plaintiff undertook to deraign title from the Government down to them; that is, the paper title, and they failed. They cannot now say that John Q. Cormack was the common source of title, because we are not claiming under John Q. Cormack and because we objected (as this record shows) to every entry and every offering purporting to show that John Q. Cormack ever had any right, title or interest in this land; we deny him ever having any right to it; we objected to the register's books with his name in it, and to the receiver's book to Carleton's abstract; to the testimony of his working on the levee; and we showed by plaintiffs' own witness that the man they were talking about was John Q. Cormack; and in fact the record shows that

John Q. Cormack never had any right, title or interest in this land.

*Brewer & Riley* for respondents.

(1) While the act creating the offices of register and receiver does not expressly require they shall keep a record, yet, if they do keep such a record and the keeping of such a record is necessary or proper and convenient to the adequate discharge of their duties, it is an official book and admissible to prove such facts therein stated. Groesbeck v. Seeley, 13 Mich. 329; Underhill on Ev., sec. 142c; Rollins v. Board of Comrs., 90 Fed. 575, 33 C. C. A. 181; Daly v. Webster, 56 Fed. 483, 4 C. C. A. 10; Cooper v. People, 28 Colo. 87; White v. United States, 164 U. S. 100; Evanston v. Gunn, 99 U. S. 660; Kyburg v. Perkins, 6 Cal. 674; Bell v. Kendrick, 25 Fla. 778; Commonwealth v. Tate, 89 Ky. 587; Seminary v. Paine, 3 Mon. 161; Pembroke v. Allanstown, 41 N. H. 365; Little v. Downey, 37 N. H. 355; State v. Van Winkle,, 25 N. J. L. 73; Knott v. Raleigh & G. R. C. N. O., 98 N. C. 73. While the statute creating the offices of register and receiver of land does not expressly require that each should keep a record of his proceedings, it is not to be presumed that the Legislature contemplated that the only record kept should be the certificate issued by each. How could the register and receiver especially in a county like Pemiscot, where 90 per cent of the lands were swamp and overflowed lands, keep track of what particular lands and to what particular persons they were sold without keeping a book showing these facts? If no such books had been kept the register and receiver would no doubt in a good many instances have sold the same tract to different and various people. (2) The appellants having contended on the trial of this case and tried it on that theory that they had the John Q. Cormack title to the land in question cannot now assume a contrary position. Kilpatrick v. Wiley, 197 Mo. 171; Gordon

v. Park, 202 Mo. 248; Farrar v. Railroad, 162 Mo. 469. That the appellants tried this case on the theory that John Q. Cormack had title to the land in question at the time of his death is clearly evident from instructions "D" "B" and "C" offered by appellants. The appellant had a deed signed by one "John J. Cormack" and claimed in the trial of this cause by these instructions that their John Cormack was the man that entered the land from the county, and again to an objection to a question Mr. Collins says: "We have some other reasons; the first is, John Q. Cormack, who entered this land, has been dead for forty years, and not John J. Cormack, who purports to convey this land; for the further reason that there is no evidence to show that John J. Cormack is not an heir of John Q. Cormack." Here the attorneys for the appellants admit that John Q. Cormack entered the land in question, here again they claim that John J. Cormack is an heir of the said John Q. Cormack. While the appellants objected to the introduction of the register's and receiver's book and the entry from Carleton's abstract, yet at the same time, they tried the case upon the theory that John Q. Cormack was the owner of the land and that appellant O'Kelly had this title. The record in this case shows that John Q. Cormack lived on the land in question for five or six years and was well known in that community and there is no proof in the record as to who John J. Cormack was, from whence he came or where he went. (3) In a suit under Sec. 650, R. S. 1899, it is not a question as to who has the title, but who of the parties to the suit has the better title. Graton v. Land & Lumber Co., 189 Mo. 332; Maynor v. Land & Timber Co., 236 Mo. 728.

## STATEMENT BY THE COURT.

This is a suit to quiet title to eighty acres of land lying in Pemiscot county, Missouri, and which is a

part of the donation of swamp and overflowed lands made to this State by the United States through an act of Congress, approved 28th of September, 1850, and subsequently granted by the State to the said county.

By an act of the General Assembly of this State (Laws 1855, p. 154), provision was made through the instrumentality of registers of lands and receivers of public moneys within certain counties of the State for the acquisition of title to such lands under a patent to be issued by the Governor of the State upon compliance by the purchasers with the provisions of said act. This statutory rule obtained in such matters until February 27, 1857 (Laws 1856-7, p. 271) when the Legislature provided for the issuance of patents to such lands to purchasers after that date in certain counties, including Pemiscot, by authorizing and directing the patents to be made in the name of the State and under the seal of the county court of said counties "signed by the president thereof, and attested by the clerk" whenever it was shown that the grantee had made full payment for such lands according to the terms of sale and in conformity with the statutes authorizing the sale. Said act further provided (sec. 3): "Such patent shall be recorded before delivery in the office of the clerk of the courts issuing the same, and such patent, and the record thereof, by such clerk, or by any other officer authorized to record deeds and other instruments of writing, and copies of such records, duly authenticated, shall be received in evidence in all courts, and other places, in the same manner, and with like effect, and may be used as fully for all purposes as patents for lands issued by the United States, or deeds duly proven or acknowledged, or the record of the same are received, or can be used in this State, and shall, at all times, and in all courts, and other places, be received as *prima-facie* evidence of title to the lands and real estate therein named." The

statute also made it the duty of the Governor to furnish to the said counties a list of the same swamp lands lying therein which should be recorded in the office of the recorder of deeds and filed in the office of the clerk of the county court and should be made a public record, and that copies of said list or the record thereof should be *prima-facie* evidence that the lands therein described were granted by Congress to this State and by this State donated to such counties. The act further provided that it should be "a public act and in force from its passage." In order to carry out the provisions of this act, and at the same session, the General Assembly, on November 4, 1857 (Laws of Adj. Sess. 1857, p. 269), passed an act entitled "An Act supplementary to an act entitled 'An Act in relation to the disposal of Swamp Lands in the counties of Cape Girardeau, Dunklin, Mississippi, New Madrid and Pemiscot, approved February 27, 1857.' Be it enacted by the General Assembly of the State of Missouri, as follows: Sec. 1. That the Secretary of State is hereby required to return by due course of mail, all the certificates of entry and payment of and for said lands, to the respective county courts named in said act, and that the county courts of the respective counties so named shall have the entire control of the matters contemplated in said act, any law to the contrary notwithstanding. This act to be in force from and after its passage. Approved November 4, 1857."

The public records of Pemiscot county were destroyed by fire in 1882.

Carleton's Abstract was offered in evidence on the trial of this case and contains the following recitals: "Date January 25, 1858; No. of entry, 815; to whom sold, John Q. Cormack; Residence, Pemiscot county, Missouri; Description of land, East Half of the Southeast Qr., Section 7, Township 20, Range 13 East; Number of acres 80; Price per acre, $1.25; Amount received, $100; Total $100, Script No. 791."

The plaintiffs adduced evidence that John Q. Cormack, who was spoken of by some of the witnesses by the surname of Cormack or McCormack, lived upon this land five or six years after the date (January 25, 1858) mentioned in the above excerpt from Carleton's Abstract, when, about 1865, he died, leaving a widow and five children, four of whom died without issue, and one died leaving as his sole heir the plaintiff Lavinia Beach; that the widow subsequently married a Mr. Garner, to whom she bore several children, and died leaving these and her granddaughter, plaintiff Lavinia Beach, as her heirs; that plaintiff H. G. Riley, Jr., has acquired by deeds all the interest of the said Garner children in and to said lands. Plaintiffs adduced oral testimony tending to prove that McCormack purchased the land in question by script which had been given him for work done upon the construction of a levy built in Pemiscot county prior to the Civil War.

There were three defendants to the cause of action brought by said Henry C. Riley and Lavinia Beach, two of whom answered, claiming title in fee to the land. The other answered separately also claiming title in fee to the land, and denying that his co-defendants had any interest or title therein.

At the close of plaintiffs' case, defendants filed a demurrer to the evidence, which was overruled. Thereupon, defendants introduced J. R. Brewer, who testified that he was one of the attorneys in the case and that he made Lavinia Beach a co-plaintiff in the case prior to going into trial; that he had no communications from her on the subject but that he discovered that she was one of the heirs and was requested to do so by a Mr. Garner, who was her half cousin. The defendants further introduced an admission that a suit is now pending in the circuit court of Pemiscot county, wherein defendant John Pigg is plaintiff and defendant H. H. O'Kelly is defendant, for the purpose of determining title to this land. The defendant O'Kelly

then offered in evidence what purported to be a warranty deed to him, dated January 25, 1909, wherein the grantor appeared to be John J. Cormack, and which purported to convey this land for a consideration of five dollars. This deed was objected to by counsel for plaintiff on the ground that there was no evidence that the grantor therein ever owned or had any interest or title in this land, but that the evidence showed the title was originally in John Q. Cormack. Thereupon, counsel for defendant made this statement and the court made the following reply:

"Mr. Collins: We have some other reasons; the first is, John Q. Cormack, who entered this land, had been dead for forty years, and not John J. Cormack, who purports to convey this land; for the further reason that there is no evidence to show that John J. Cormack is not an heir of John Q. Cormack.

"Court: If this is all the evidence you have I will have to exclude the deed from the jury. The proof here yesterday shows very clearly that the man who owned this land died in 1865, a good many years before the execution of this deed which you are offering here to-day. There is some variance in the name among the different witnesses, but it has been clearly shown that the man is dead, whether Cormack or McCormack, and that being the case he could not make a deed to your man in 1889 [1909].

"To the exclusion of the deed the defendant O'Kelly excepts.

"Mr. Brewer: We would like for the record to show that the attorney announced that he had no other evidence.

"Court: Yes, sir."

Thereupon, defendants H. H. O'Kelly and Jace Fisher prayed the court to give an instruction that under the pleadings and evidence plaintiffs could not recover, which the court refused, and instructed the jury, upon request of plaintiffs, to bring in a verdict

for them, which was accordingly done. The defendants requested and the court refused their instructions B, C, D, two of which attempted to connect the deed to O'Kelly with the title which John Cormack obtained from the county in 1858, and the third conceded that Carleton's Abstract showed title in said John Cormack in 1858. After the overruling of their motion for new trial, two of the defendants (the third not appealing) appealed to this court. The errors assigned will be noticed in the opinion.

### OPINION.

BOND, J. (after stating the facts as above).

I. The learned counsel for appellants concede in their brief that the title to the land in suit was well vested in Pemiscot county. They are justified in this admission because the record shows this was

Common Source of Title.

accomplished as provided by law and that a formal patent, regular in all respects from the State to the county was introduced in evidence. But they insist that there is no adequate proof in the record that the county ever parted with its title to John Cormack or John Q. Cormack, the ancestor under whom the plaintiffs claim. And they further insist that the record does not show that their clients claim title under said Cormack or assumed that he had title to the land in question.

We will dispose of these contentions in the inverse order, for if it should appear that the parties to this case as they stand upon the present appeal, claimed under a common ancestor or assumed title to be well vested in a common ancestor, then it will be wholly unnecessary to inquire as to the validity of the title of such ancestor. For the only question will be upon whom that title was devolved.

The rule is settled in this State that where the adversary parties in actions to quiet title as well as in

250 Mo.—42

actions of ejectment hinge their claims of title to the property in controversy upon that of a common grantor or ancestor, then the court and jury have but one issue to solve, to-wit, which of the adversary parties acquired the title under which they respectively claim? And in determining this issue, it is sufficient if the record shows that the contending parties proved, admitted or assumed a common source of title. [Harrison Machine Works v. Bowers, 200 Mo. l. c. 235; Charles v. White, 214 Mo. l. c. 211, 212; Maynor v. Land & Timber Co., 236 Mo. l. c. 728; Toler v. Edwards, 249 Mo. 152.]

In the case at bar, the defendants offered evidence of no title, paper or possessory, to the land in dispute other than what purported to be a deed to one of them (O'Kelly) dated the 26th of January, 1909, signed by one John J. Cormack; and in connection with the offer of this deed counsel for defendants stated that he did so upon the theory that it had not been shown by the evidence that the purported grantor was not an heir of the John Q. Cormack "who entered this land, and has been dead for forty years." As this was the sole evidence of the title of the appealing defendants, and as the concomitant admission made by their counsel at the time it was proffered, shows that its purpose was to connect the claim of these defendants with John Q. Cormack, the conclusion is unavoidable that unless they could thereby deraign title from John Q. Cormack, they had none whatever to rely on in this case. This deed was excluded from the evidence, but its proffer and the reasons given therefor demonstrate that the title of John Q. Cormack as a common ancestor was *assumed* by the appealing defendants. But they did not stop there, for the record shows that they endeavored by instruction B, refused by the court, to submit that issue to the jury. The instruction is, to-wit:

"B. The court instructs the jury *that one John*

*Cormack obtained title to the land in controversy from Pemiscot county, Missouri, in the year 1858,* and that the deed offered in evidence by defendant H. H. O'Kelly to himself by John Cormack makes a *prima facie* case that said defendant is the owner of said land, and places the burden of disproving said *prima facie* case upon the other defendants and plaintiffs; and unless such *prima-facie* case is overcome to your reasonable satisfaction by the preponderance of greater weight of evidence your verdict should be for the defendant H. H. O'Kelly.'' (Italics ours). And sought to submit the same questions by instructions D and C framed upon the theory that Carleton's Abstracts disclosed the title to the land in controversy to have vested in the year 1858 in John Cormack, and that the deed proffered by them "was *prima facie* evidence that said land title passed to said defendant H. H. O'Kelly.''

It is evident from what has been said that the appealing defendants not only *assumed* but conceded on the trial of this case that all the title they had depended upon the acquisition of the title of the John Cormack who died over forty years before the signing of the deed, which they offered to sustain their claims, by a person whom the evidence did not connect with the original purchaser from the county either as heir, devisee or grantee.

We, therefore, rule that the doctrine of common ancestor applied to the appealing defendants.

II. The learned counsel for defendants argue that the instructions requested by them upon the theory that the title to the land in dispute. was well vested in the John Q. Cormack under whom plaintiffs claim were not intended to be so understood but **Demurrer: Waiver.** were offered after the court had erroneously overruled the demurrer to the evidence at the close of plaintiffs' case, wherefore such

instructions were framed to make the best they could out of the theory of the court that the recitals of Carleton's Abstracts were sufficient to show that the John Q. Cormack (or, as some of the witnesses called the same person, John McCormack) had acquired the title of the county to the land in dispute. But this contention of the counsel overlooks the well settled law, that if they intended to rely upon the infirmities of the plaintiffs' case, it was their duty to *stand* upon their demurrer to the evidence interposed at the close of plaintiffs' testimony. For if they failed to do that and subsequently introduced testimony on their own behalf, that amounted to a waiver of their previous demurrer to the evidence. [Hilz v. Railroad, 101 Mo. l. c. 42; Frye v. Railroad, 200 Mo. 377; Kirkpatrick v. Pease, 202 Mo. 471; Crawford v. Stockyards Co., 215 Mo. 394.] And while it would not deprive them of their subsequent right to demur to the evidence at the close of the entire testimony for both parties, it did make it the duty of the court in the consideration of their last demurrer to give the plaintiffs the benefit and aid of any and all testimony and proceedings had in the case, and made it the duty of the court to overrule the second demurrer to the evidence, if from a view of the entire testimony and proceedings and all and every reasonable inference to be drawn therefrom the jury would be entitled to find for the plaintiffs. [Knorpp v. Wagner, 195 Mo. 637; Charlton v. Railroad, 200 Mo. 413; Von Trebra v. Gas Light Co., 209 Mo. 648; Phelan v. Paving Co., 115 Mo. App. 423.]

In this case the appealing defendants did not stand upon their demurrer interposed at the close of plaintiffs' case but proceeded to put in testimony upon which their claims rested. As has been shown, the only conclusion which could have been drawn at the close of the entire case was that the adversary parties were contending only for the title of John Q. Cormack or John McCormack, as all of the witnesses said the same

man was called. The record shows by undisputed testimony that none of the defendants got any part of the title of this man, and that the title of his heirs and distributees was acquired by the two plaintiffs. The court therefore did not err in overruling their demurrer interposed by the appealing defendants at the close of the entire case. And whether or not he might have erred in overruling the demurrer interposed at the end of plaintiffs' case is not a question for review since appealing defendants did not stand on that demurrer.

III. This renders it wholly unnecessary to pass on the ruling of the court in the admission of the recitals from Carleton's Abstracts or to rule
Carleton's
Abstract.        on the admissibility in evidence of the original books kept by the land register and receiver of public moneys in Pemiscot county which were excluded by the court.

The question as to the admissibility of these books is discussed in the briefs of the respective counsel, and attention is directed to the fact of the practical necessity for the keeping of such books (although not specifically required by the statute) in order that the registers of land should retain knowledge of locations in counties where, as in Pemiscot, most of its territory is swamp or overflowed lands, and it is further suggested, that in some rulings heretofore made as to the admissibility of such books or their contents in evidence, the mind of the court was not directed to the statute, set out in the statement, requiring the Governor after November 4, 1857, to transmit the certificates issued by such officers to the counties who thereafter were empowered to patent swamp and overflowed lands. And, hence, parties desiring the evidence to be afforded by such certificates could not after that date obtain them in Jefferson City; and where they were burned after being sent to the counties (as in some cases) no first hand evidence might be in existence.

The discussion of these questions by counsel, though illuminating and entertaining, does not present any matter necessary for immediate ruling, since the present case is determinable on the grounds heretofore stated.

IV. Some complaint is made of a want of authority of the attorneys for plaintiffs to represent one of the parties. The authority of an attorney who is duly licensed and practicing is presumed until challenged in some adequate way, and the burden of disproving such authority is imposed upon the party questioning it unless the client has denied the authority of the counsel—in which case, the burden is shifted upon the attorney. [4 Cyc., 931b.] During the trial of this case it appeared in evidence that one of the co-plaintiffs (Lavinia Beach) was joined as such before the trial began at the request of her cousin; that she was a non-resident and did not directly communicate with the attorney for respondents. She has not questioned the authority of respondents' attorney to represent her, neither did the trial court do so, nor did the defendants directly challenge the authority of respondents' attorney to represent her by motion supported by affidavits as is the proper practice, but seek to do so in a collateral way. This they cannot do. Hence, nothing is presented for review by the point attempted to be made in this way. [4 Cyc. 930, sub-section 5; Miller v. Assurance Co., 233 Mo. l. c. 95; Scott v. Royston, 223 Mo. 568; State ex rel. v. Crumb, 157 Mo. l. c. 557; Cochran v. Thomas, 131 Mo. 258.]

*Attorney's Authority.*

Under the entire record in this case, the court was justified in directing the quieting of title of plaintiffs to the land in controversy against the appealing defendants. The judgment is therefore affirmed.

All concur.