MATTIE COOPER, APPELLANT, v. ARMOUR & COMPANY, RESPONDENT.*

Kansas City Court of Appeals. February 11, 1929.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 630, p. 736, n. 58; 4CJ, section 2831, p. 845, n. 87; Attorney and Client, 6CJ, section 128, p. 631, n. 76; Witnesses, 40Cyc, p. 2559, n. 65.

*John S. Boyer* and *Mosman, Rogers & Buzard* for appellant.

*Brown, Douglas & Brown* for respondent.

BLAND, J.—This is an appeal from an order or judgment overruling plaintiff's motion to vacate a judgment in favor of plaintiff and against the defendant.

The facts show that on the 5th day of March, 1925, Messrs. Pross T. Cross and Maurice P. Murphy, attorneys at law, filed in the circuit court of Buchanan county a suit for damages in the name of plaintiff and against the defendant. The petition alleged that on the 1st day of February, 1924, plaintiff, while employed by the defendant in its packing plant in St. Joseph, was injured by falling into an elevator shaft in one of the defendant's buildings, said fall having resulted from the negligence of the defendant. Damages were prayed in the petition in the sum of $3000. On March 7, 1925, before the return day of the writ of summons but after it had been served, defendant, without notice to plaintiff, entered its appearance confessed judgment in the amount sued for and paid that sum to the clerk of the court in satisfaction of the judgment. At the time of the filing of plaintiff's suit, Cross and Murphy also brought suit for her husband for loss of her services and founded upon plaintiff's injuries. On the 11th day of March, 1925, plaintiff through her present attorneys, John S. Boyer and the firm of Mosman, Rogers & Buzard, filed a motion in the case to set aside the judgment and "vacate proceedings." This motion alleged that plaintiff had not employed Cross and Murphy to institute a suit for her and prayed that the judgment rendered in her favor, and all proceedings pertaining thereto, be set aside so that she might institute a suit against defendant to recover damages in the sum of $50,000, which she alleged was the amount of defendant's indebtedness to her by reason of the injuries sustained by her. This motion was verified by plaintiff's oath. The motion was overruled by the court, resulting in this appeal.

It was plaintiff's contention at the trial of her motion that she never at any time employed either Cross or Murphy to institute suit for her but that they were employed by her husband so to do without her knowledge and consent. At the opening of the trial, plaintiff voluntarily took the witness stand and testified as follows; that her injuries were the result of a fall down an elevator shaft in defendant's packing plant in St. Joseph, Missouri, under circumstances showing negligence on the part of defendant; that she fell about three floors and sustained serious injuries, consisting, in part, of "a broken pelvis" and a fracture of her right limb about two inches above the knee. She testified that she was in the hospital as the result of these injuries for five months; that the bones of her right limb protruded through the flesh; that she has a running sore on her limb now and that she is unable to get around in her home without the aid of a crutch and when she goes on the street she is compelled

to use two crutches. There seems to be no dispute that plaintiff received severe injuries.

Plaintiff testified that she first learned on March 7, 1925, of the fact that suit had been filed in her behalf by Cross and Murphy, when she read it in a St. Joseph newspaper published in the city where she lived. She further testified that she had been negotiating with a claim agent of the defendant in reference to a settlement of her case and that she did not feel that it was necessary to employ attorneys to represent her and that she had not done so; that she learned of the judgment on Saturday and on the following Monday she called up Kansas City over the long distance telephone for Mr. Mosman, of the firm of attorneys who now represent her, and talked with Mr. Rogers of that firm, Mr. Mosman being ill; that she had been advised by her father that if she needed attorneys to employ the firm of Mosman, Rogers & Buzard. It appears that her father lived in the country near St. Joseph and would visit plaintiff periodically and on one or more of these visits gave plaintiff this advice, according to her testimony.

On cross-examination plaintiff testified that she had talked several times with the claim agent of defendant and had been offered the sum of $1500 in addition to the payment of her hospital and other expenses in settlement of her case and that he finally asked her if she would be satisfied with the sum of $2500; that she refused both of these sums; that she last saw him about three weeks before the suit was filed but that he had mentioned the sum of $2500 before that time. She denied that she had consulted any lawyers about filing suit for her before the suit was filed. She testified that a member of a firm of lawyers, other than Cross and Murphy, called on her on afternoon and solicited her case and she refused to employ that firm; that she told him that she had no need for lawyers and would not employ them; that a solicitor from this firm was there several times; that Mr. Murphy was at her house several times, "he had been chasing my husband ever since I got hurt."

Plaintiff further testified that she knew her husband also was entitled to sue; that while she and her husband were on good terms, they did not discuss their cases; that "we had not discussed cases very much because I was not well . . . I asked my father's advice in this case;" that she knew her husband talked to Cross and Murphy about bringing *his* suit; that she knew that he was going to employ them and that she saw him sign a contract with them at her house. This, the evidence shows, was on February 23, 1925. She further testified that on this occasion Cross and Murphy were present at her home; that this was the only time Cross was in her home and that when he came there he was a stranger to her; that Cross and Murphy on this occasion asked her if she did not "want to file suit"

and she stated, "No, I am not ready to file a suit;" that she emphatically told them that she not only did not want to file a suit but that she did not "ever want them to file a suit" for her. That Eggleston, the solicitor for the other firm of lawyers which we have mentioned, arrived at the house before Cross and Murphy came there and was there during their call but left before they did; that she signed a statement at the request of Cross and Murphy of the facts of this meeting; that this statement was to be used in her husband's case; that she did not know where the statement was at the time of the trial; that she signed her name to no other statement.

Plaintiff further testified that after her husband, without her consent, employed Cross and Murphy to bring the suit, he said nothing to her about it; that she asked her husband if he authorized Cross and Murphy to bring suit for him, (as to when this conversation was had her testimony does not show) and he told her that he had so authorized them; that she then told her husband that she had specifically told them not to file suit for her; that she told him that "when I had any attorneys I would have my own attorneys;" that when she found out that Cross and Murphy filed suit, she did not attempt to communicate with them either by telephone or otherwise and that although Murphy afterwards telephoned the house on more than one occasion asking her for her husband, she said nothing to him about it; that she had not seen Murphy since the suit was filed except on the morning of the trial; that neither Cross nor Murphy had ever attempted to excuse themselves for bringing suit for her or, in fact, said anything to her about it; that while her father advised her that if she was required to have a lawyer to get her present attorneys, her father did not advise her husband on the matter as far as she knew; that her husband never employed anyone in her presence to bring suit for her but that he told Cross and Murphy and others in her presence that "he did not think we would have to have lawyers;" that she did not consult with her husband after the judgment had been rendered as to what steps it would be advisable for her to take.

Plaintiff thereupon closed her case and defendant put upon the stand Frank Cooper, plaintiff's husband. This witness testified that he employed Cross and Murphy to bring suit on behalf of plaintiff without her knowledge and consent; that he had a discussion with her in reference to the suit having been filed the evening of the day she first learned of it and told her that "I thought I had authority" to employ attorneys for her to bring the suit; that at that time she told him that "she would not stand for it, that she never had any attorneys in the case." He further testified that he had never before discussed with her the matter of having attorneys bring suit for her and him (that is two suits) but that he' had talked to her

about the advisability of bringing her suit and she told him not to employ any lawyers; that she was not ready to "employ lawyers yet; that she thought that the company would make satisfactory settlement with her;" that if she needed a lawyer, she would get one herself . . . "that I could get any lawyer I wanted to, she would get her own lawyer." That this conversation took place about the 23rd day of February, 1925, in the presence of Cross and Murphy who were at his house on the evening of that day; that Cross had never been to his house but the one time; that Murphy had been there about three times; that Murphy came there only upon the invitation of the witness; that Eggleston was also there the evening of February 23rd; that the witness signed a contract on this occasion with Cross and Murphy employing them to represent him; that a member of the other firm that we have alluded to, came to his house to see him after that but that Eggleston did not come any more and that he did not tell the members of the other firm that came to see him that he had employed Cross and Murphy; that Cross and Murphy never came to see his wife after that evening; that at this meeting she told Cross and Murphy that she "would not employ them; that when she employed lawyers she would get them for herself;" that he talked to Murphy the day after the suit for plaintiff was brought but said nothing to her about the filing of the suit until she saw it in the newspaper although he knew it and thought it "important;" that he did not know of, nor had he ever heard of the Kansas City attorneys that his wife employed to bring this proceeding; that his wife had never mentioned their names; that plaintiff had not in his presence discussed her case with her father; that he had known Cross about fifteen years and had contemplated employing him and Murphy "from the beginning" as his attorneys; that he talked with his wife about it and that she knew he was contemplating employing Murphy; that what his wife signed on the night of the 23d of February was a statement for use in his case and that he kept no copy of this statement; that he had an understanding with Murphy that his suit was to be filed for $3000 after which his petition was to be amended, and that his wife's suit should be filed for $30,000, and the petition afterwards amended.

Upon being recalled by the court, the witness, Frank Cooper, testified that the reason he filed suit in his wife's case was that defendant's claim agent was bothering his wife, trying to get a statement from her, and that other lawyers were soliciting her for her case; that she was not in condition to discuss it and it made her nervous; that the claim agent was having medical work done for his wife without his consent; that when they offered her $1500 in settlement "it didn't look to me like they were going to treat her right and

I took things in my own hands," and he told Cross and Murphy, "You file this suit (his wife's) and I think it will be all right."

Eggleston testified that he was engaged in the business of soliciting cases for the other firm of lawyers we have alluded to, and that he went to plaintiff's house and discussed with her and her husband about bringing suit for them; that he was at their house twice, the second time being a few days or a week before this suit was filed; that on both occasions plaintiff and her husband told him that they had not employed lawyers but had talked to a number of them; "that they knew Mr. Cross and if they considered anyone, they would either consider Cross and Murphy or our firm;" that the first time he was there, which was six weeks or two months before this suit was filed, plaintiff told him that she "knew of Mr. Cross or knew Mr. Cross" and that she considered him a "high class man;" that she never mentioned to him plaintiff's present firm of lawyers. Upon being questioned by the court, the witness testified that she and her husband "both said that if they employed any lawyers they would get either Cross and Murphy or his firm;" that plaintiff and her husband talked about "taking a change of venue to Savannah" as they thought they would be able to get a better verdict in a smaller place than a city of the size of St. Joseph; that Mr. Cross had a brother in Savannah who would assist them in the trial of their cases there.

On cross-examination, he testified that what plaintiff and her husband said was "that they would consider Cross and Murphy or his firm when they got ready to employ attorneys;" that they did not say that they had employed attorneys or that they would do so. On re-direct and recross-examination he testified that they said that in case they did employ attorneys they would employ his firm or Cross and Murphy. On cross-examination he testified that plaintiff told him that she was not then ready to employ attorneys, that "she was going to try to settle with the company." On re-redirect examination the witness testified that on an occasion when he was in plaintiff's house, Cross and Murphy came in and that plaintiff was not introduced to Cross but spoke to him when he arrived. In reference to their employment of counsel. the witness stated, "Mrs. Cooper and then, I think Mr. Cooper also, made the statement (the one we have quoted, supra, about employing attorneys), afterwards, I am sure that she was the one." On re-recross-examination he testified that plaintiff did not talk very freely but "seemed to be in a weakened condition;" that "her husband and the other gentlemen who were there carried on the conversation."

Defendant placed upon the stand Mr. Rogers of the present firm of lawyers employed by plaintiff. On direct examination he testified that he was acquainted with Mr. Pross Cross; that he first met him

in November or December, 1923, at which time he had a case in which Mr. Cross was associated with him, which had gone by change of venue to Clinton county, and that he employed Mr. Cross to aid him there in the case; that he had seen Mr. Cross "every once in a while" since; that occasionally Mr. Cross "comes into our office;" that at no time had he any other litigation in which Mr. Cross was interested; that he had talked to Mr. Cross about this case; that Mr. Cross came to his office to see him about it; that with respect to filing this motion, he thought Mr. Cross first came to his office the day before the motion was filed. When asked how Mr. Cross happened to be in his office, he said, "I wouldn't say whether he came in response to a letter I wrote him or whether he came in before he got the letter;" that he thought that Mr. Cross came in the day before the motion was filed; that Mr. Cross had been in his office once or twice since the motion was filed; that he did not know for what purpose Cross was there on these occasions but "I know I talked this case over with him;" that the witness regards this case "of some importance and I wanted to know any facts that I could find out about."

In rebuttal, plaintiff testified that she had seen Eggleston at her house two or three times but that she had at no time told him that she was going to employ Cross and Murphy or that if she did not employ them she would employ the firm Eggleston represented; that her husband did not tell Eggleston that in her presence; that she had never told anyone that she had employed Cross and Murphy as her attorneys or that she was going to employ them.

It appears that Mr. Murphy was in the court room at the time of the trial, having been subpoenaed by the defendant. At the close of the case the court expressed a desire to hear the testimony of Mr. Murphy, if either desired to call him to the stand. Plaintiff's attorney then stated that he offered no objection to defendant's calling Mr. Murphy and defendant's attorney replied that "defendant had subpoenaed Mr. Murphy so that he might be present in case the plaintiff desired to use him." Thereupon the court stated, "if neither party desired to call Mr. Murphy to the stand we will consider the case closed" and the case was closed. The court thereupon rendered a judgment overruling plaintiff's motion.

Thereafter plaintiff filed a motion to set aside the order or judgment on her motion to vacate the judgment and proceedings, and in support thereof filed the separate affidavits of Messrs. Cross and Murphy. These affidavits, state in substance, that plaintiff's suit was filed at the request of plaintiff's husband, that it was the intention to ask judgment in the sum of $30,000 but "through mistake, inadvertence, oversight and misprision, the sum of $3000 was written in said petition instead of the sum of $30,000;" that plaintiff had never employed them at any time to bring suit for her but that on

the night of February 23, 1925, at her house, she said to them that "she was not ready to employ counsel, and was not ready to and would not institute suit; that she thought defendant would settle with her and that she would not, in any event, employ attorneys until she was convinced it was necessary;" that thereafter plaintiff's husband insisted upon their filing suit in behalf of his wife and directed them to file suit in the sum of $30,000 in her behalf and one for $3000 in his behalf and that this was shortly before the suit was filed. Thereafter affidavits were filed on behalf of the defendant and counter-affidavits on behalf of plaintiff and various other affidavits on behalf of each party. Finally the matter contained in the affidavits became one mostly of personalities between the attorneys for defendant and other attorneys, and Cross and Murphy. The court refused to strike out these affidavits on motion of the respective parties and overruled plaintiff's motion to set aside his order made on plaintiff's motion to vacate the judgment and proceedings.

It is the contention of the plaintiff that the court erred in overruling the motion of plaintiff to set aside the original judgment and proceedings for the reason that the attorneys who filed suit had no authority from her to do so. In this connection it is one of the claims of the plaintiff that as the presumption of the authority of an attorney exists only until it is questioned or denied by the party whom he assumes to represent, and as she filed her motion, supported by her affidavit, denying such authority (which was the proper way to get at the matter, see, Riley v. O'Kelley, 250 Mo. 647, 662), the burden of showing the authority of Cross and Murphy to represent her shifted to the defendant, and as defendant introduced no testimony tending to so show, the court should have rendered judgment in favor of plaintiff, setting aside the original judgment entered in the case.

Plaintiff cites a number of authorities holding that the burden of proof is on the party claiming a lack of authority in the attorney assuming to represent him but that after such party has denied his authority, the burden of showing authority is on the attorney. Among the authorities cited are the following: Riley v. O'Kelly, supra; Miller v. Assurance Co., 233 Mo. 91, 96; Munhall v. Mitchell, 178 Mo. App. 494; Drug Co. v. Wislon, 237 S. W. 1044; Bradley v. Welch, 100 Mo. 258, 267, 268; 6 C. J. P. 636. On the other hand defendant insists that the burden of proof is upon the party denying the authority of an attorney to show that it did not exist and that such party must make "positive proof" that such authority was lacking, citing in support of contention (among other cases) State ex rel. Ponath v. Muench, 230 Mo. 236, and Patterson v. Yancey, 97 Mo. App. 681.

Whether the rule relied upon by plaintiff is applicable to the peculiar circumstances of this case, we need not say for the reason that plaintiff tried the case upon the theory that the burden was upon her to show by testimony that Cross and Murphy had not been employed as her attorneys. Had she desired to rely upon the rule she now invokes, she would not have introduced testimony tending to support her contention after she had filed her motion to vacate the judgment supported by her affidavit, but would have permitted defendant to take the laboring oar. On the contrary she, by taking the witness stand in support of her motion, led the court to believe, and to proceed in the case on the theory, that the burden of proof was upon herself. Having tried the case on this theory, she cannot advance another theory in this court. [3 C. J. 736; Long v. Lackawanna Coal & Iron Co., 233 Mo. 713; Fitzpatrick v. Weber, 168 Mo. 562; Wilcox v. Court of Honor, 134 Mo. App. 547, 556.]

A serious question to be determined in this case is whether plaintiff sustained the burden of proof assumed by her. This proceeding is one that appeals to the sound discretion of the trial court, and this court will not interfere with its action in refusing to vacate and set aside a judgment, such as the one involved in this case, where there is a conflict of evidence. It will only do so where the evidence is all on one side, and it is clear that the discretion of the trial court has been abused. [Craig v. Smith, 65 Mo. 536.] There is a firmly-established presumption in favor of attorney's authority to act for any client he professes to represent. [Miller v. Assurance Co., supra, l. c. 95.] This presumption may be likened to that arising in a suit on a promissory note against the maker. Where the defendant proves fraud in the procurement of the note, a presumption arises that the holder had notice of the fraud and the burden is on him to show that he took the instrument in due course, that is, to prove good faith and lack of notice of the fraud. The holder having shown this, unless the defendant proves specific facts tending to show plaintiff's actual knowledge of the fraud or bad faith, plaintiff is entitled to a directed verdict. However, when plaintiff's evidence is contradicted or impeached, or itself discloses impeaching facts, then plaintiff is not entitled to a directed verdict but a question for the trier of the fact arises, and this is so even though defendant introduces no testimony showing actual knowledge or bad faith on plaintiff's part. [Newton County Bank v. Cole, 282 S. W. 466; Kincaid v. Estes, 282 S. W. 102.] In the case at bar, plaintiff testified that she had not employed Cross and Murphy and defendant introduced no direct testimony tending to show that she had. However, it is apparent the court did not believe plaintiff's testimony. The record show that it was contradicted in several respects. This, together with some very unusual circumstances about her story, may

have very well cast doubt upon its verity in the mind of the trial court.

Plaintiff testified that she was not acquainted with Cross when he called at her home on February 23d but Eggleston testified that she did know Cross when he came in. Eggleston also testified that plaintiff told him, in the presence of her husband, that when she employed attorneys that she would consider employing, or would employ, either Cross and Murphy or the firm he represented, and that plaintiff and her husband talked about taking a change of venue to Savannah as they thought they could get a better verdict in a smaller city where Cross had a brother who was an attorney. Plaintiff testified that she told Cross and Murphy that she never would employ them and that she had always intended to employ her present attorneys if she needed lawyers. The testimony of Eggleston contradicted that of plaintiff in a number of matters. It was within the province of the court to believe all or any part of Eggleston's testimony.

Plaintiff testified that she did not talk to her husband about her case, a very unusual circumstance. She also testified that she intended from the beginning, in the event she needed attorneys, to employ her present lawyers to prosecute her case and although Cross and Murphy talked to her about their proposed employment in her husband's presence, yet, although she and her husband were on good terms, she had never mentioned the names of her present lawyers to her husband or that she contemplated employing them, nor did she indicate to Cross and Murphy any such an intention. This, as far as her husband was concerned, was very unusual. She testified that her husband did not tell her that he employed Cross and Murphy to bring suit for her although he knew for several days before she mentioned it to him that suit had been filed. She testified that she did not know suit had been brought until she saw it in a newspaper, which was several days after it was filed, yet, having found it out and that Cross and Murphy had brought it, she did not say a word to Murphy or Cross about their having brought suit for her, although she talked with Murphy several times after this. She further testified that she never wrote or communicated with either Cross, Murphy or defendant in regard to the matter. It was unusual that she would employ her present attorneys without letting her husband know anything about it. These are some of the unusual things about the case as testified to by plaintiff. It is apparent that the court did not believe plaintiff's testimony and we are not prepared to say that the circumstances were such that he was required to believe her.

But when it comes to the testimony of plaintiff's husband we have another matter to deal with. Defendant put him on the stand and thus vouched for his credibility. It will not now be allowed to say

that he did not speak the truth. This witness testified positively that he had no authority to employ an attorney for his wife and that his wife refused to employ Cross and Murphy. The testimony of the husband in this respect was wholly uncontradicted. The presumption of authority in Cross and Murphy to bring suit on behalf of plaintiff was therefore overcome by defendant's own evidence, and went out of the case. [Rodan v. St. Louis Transit Co., 207 Mo. 392.] Under the circumstances the court abused his discretion in refusing to vacate the judgment.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.