# BERTHA VON TREBRA v. LACLEDE GASLIGHT COMPANY, Appellant.

### Division One, February 26, 1908.

1. **NEGLIGENCE: Demurrer: Prima-Facie Case: Electric Wire.** Where there was evidence in the case that the lineman was rightfully on the pole above the defendant's electric wire, that he came in contact with it, that when he did so a flash of light was seen at the point of contact, that he was seen at the same instant to fall head-foremost from the pole to the ground, his widow made out a prima-facie case, and a demurrer to the evidence was properly overruled.

2. ———: ———: ———: ———: **Insulation.** It is not necessary for plaintiff to prove, as a part of his prima-facie case, that the insulation was off of the wire; if the lineman's injuries or death was caused by coming in contact with the wire, it is conclusively presumed that the insulation was defective.

3. ———: **Electric Wire: Allegation and Proof: Variance: No Objection: Entire Failure.** Where the petition charged that "defendant had allowed its wires to become defective in insulation and in a dangerous condition," testimony to the effect that "circular loom" insulation was better and safer than that used, is not admissible; but if defendant does not object to the testimony, it waives the question of pleading, and its assignment that there was a variance between the allegation and proof will not avail; for, there is not an entire failure of proof, since the gravamen of the charge was the "dangerous condition" of the wire, and the defective insulation, which is charged, and presumed from the flash of light and the lineman's instant fall on coming in contact with the wire, may have been only one of many ways in which defendant may have been negligent in permitting the wire to become dangerous.

4. ———: **Contributory.** The burden is on defendant to prove contributory negligence, and while there may be such evidence as would have authorized the jury to find that the lineman was guilty of such contributory negligence as caused his death, yet if they did not do so, and the issue was properly submitted to them, the appellate court will not interfere with their verdict.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*I. H. Lionberger* for appellant.

(1)  The specific and only act of negligence charged in the petition is that "defendant had allowed its wires to become defective in insulation and in a dangerous condition." No proof in support of this allegation was offered, and none appears in the record. The uncontradicted testimony of all the witnesses, both for plaintiff and defendant, establishes the fact that the insulation was of the sort usually used and required by law, and in good condition at the time of the accident. Negligence of another sort, to-wit, in not providing a new and different kind of insulation, which was not required by the ordinance, is not provable under such charge. McCarthy v. Rood Hotel, 144 Mo. 397; McNamanee v. Railroad, 135 Mo. 440; Schneider v. Railroad, 75 Mo. 295; Waldhier v. Railroad, 71 Mo. 516.  (2)  Mischief, which a reasonable person could not have anticipated, cannot be taken into account as a basis on which to predicate a wrong.  By a reasonable estimate of probabilities it could not have been anticipated that a situation which had proved safe for all sorts of linemen ascending and descending the pole for a period of fourteen years, was dangerous to an ordinarily careful man. Fusch v. St. Louis, 167 Mo. 646; American Brewing Assn. v. Talbot, 141 Mo. 674.  (3) Defendant was in no sense an insurer of the safety of the plaintiff's husband.  It was bound to use reasonable care, all the facts of the situation considered. The wires were not on a roof, nor accessible to the public in general.  They were strung on a pole elevated a considerable distance above the highway and no one had the right to go near them but an experienced lineman familiar with wires and their dangers.  The wires were plainly visible, and strung on the proper or back side of the pole.  They were insulated in the customary and required manner. Circular loom would have been more dangerous in wet weather, and after storms wires

usually require to be repaired. They had been passed in safety thousands of times by all sorts of men, and no accident had ever occurred. They had been passed in safety by Von Trebra himself. The situation was safe to one using ordinary care, and it was not negligence not to anticipate such an accident as occurred. Fusch v. St. Louis, 167 Mo. 646; Frauenthal v. Gas Co., 67 Mo. App. 1. (4) The evidence does not prove, nor tend to prove, that plaintiff's husband was killed by the wires of defendant. He might have met his death from either of several causes, all of which existed and are established by the evidence. A conjecture that defendant's wires might have caused the death is not sufficient to fix responsibility upon defendant. Trigg v. Lumber Co., 187 Mo. 227; Hewett v. Steele, 136 Mo. 335. (5) Assuming, however, that the wires of defendant were dangerous and caused the death of plaintiff's husband, yet plaintiff's own testimony shows that he was guilty of contributory negligence. Von Trebra was a lineman of long experience in this sort of work. He knew all the wires, the currents carried and the dangers of contact. He had been cautioned by his own foreman. The wires of defendant were in plain view. He had passed them in ascending the pole. He saw the insulation used. His clothes were saturated with perspiration. He started down the wrong side of the pole, knowing the presence of the wires. He might have gone the other way. To choose a dangerous and unnecessary way to descend the pole while his clothes were wet and the dangers of contact were excessive, was to neglect a precaution which ought to have been taken. Under such circumstances, he was the author of his own wrong. Davies v. Mann, 10 M. & W. 548; Roberts v. Tel. Co., 166 Mo. 378; Phelps v. Salisbury, 161 Mo. 1; Howelson v. Railroad, 157 Mo. 225; Watson v. Railroad, 133 Mo. 250; Craig

v. Sedalia, 63 Mo. 430; Ray v. Poplar Bluff, 70 Mo. 252.

*Chas. L. & Phillips Moss* for respondent.

(1) (a) Under the allegation of the petition that by reason of the negligence of defendant the wires "were in a dangerous condition," any evidence tending to show that defendant had not discharged its full duty in rendering them safe is admissible. Its duty under the circumstances of this case was to use every precaution which was reasonably accessible to insulate its wires at the point of contact or injury, and to use the utmost care to keep them so. Geisman v. Elec. Co., 173 Mo. 654; Winkelman v. Kansas City E. L. Co., 110 Mo. App. 184; Ryan v. Railroad, 190 Mo. 621. (b) "An objection that the evidence is not within the issues must be made at the time the evidence is offered or it is waived and the appellant can neither complain of instructions based upon such evidence nor ask the upper court to pass upon it on appeal." Stuart v. Goodrich, 9 Mo. App. 125; Chouquette v. Railroad, 152 Mo. 257; Harwood v. Tons, 130 Mo. 225; Miller v. Railroad, 105 Mo. 421; Lancaster v. Ins. Co., 62 Mo. 121; Sexton v. Allen, 49 Mo. 417; Lox v. Railroad, 57 Mo. App. 350; Bank v. McMenamy, 35 Mo. App. 203. (c) Unless there is a failure of proof in a case "in its entire scope and meaning," there is no failure of proof, but only a variance. In the case of a variance, which may be cured by amendment, defendant's remedy is by affidavit proving to the satisfaction of the court that he was misled as provided for by the statute, Revised Statutes 1899, section 655. In case defendant fails to pursue this remedy the point is waived and objection to the evidence claimed to be variant can not be urged by him on appeal. To allow him to do so would deprive the plaintiff of his right to amend at the trial.

Chouquette v. Railroad, 152 Mo. 257; Miller v. Railroad, 105 Mo. 144; Ridenhour v. Railroad, 102 Mo. 270; Meyers v. Chambers, 68 Mo. 626; Wills v. Sharp, 57 Mo. 56; Turner v. Railroad, 51 Mo. 509; Litton v. Railroad, 111 Mo. App. 144; Chartrand v. Railroad, 57 Mo. App. 425; Brown v. Railroad, 31 Mo. App. 661. (d) The allegations of the petition that the wires ''had been allowed by defendant to become defective in insulation, and were in a dangerous condition,'' were amply proven under the doctrine of *res ipsa loquitur* by the evidence tending to prove that Von Trebra could have been killed by no other agency than a shock from defendant's wires. Geisman v. Elec. Co., 173 Mo. 654; Winkleman v. Kansas City E. L. Co., 110 Mo. App. 184; Ryan v. Railroad, 190 Mo. 621. (2) ''It is the duty of an electric lighting company to use every accessible precaution to insulate its wires at all points where people have the right to go and to use the utmost care to keep them so insulated.'' Geisman v. Elec. Co., 173 Mo. 654; McLaughlin v. Elec. Co., 100 Ky. 173, 34 L. R. A. 812; Overall v. Elec. Co. (Ky.), 47 S. W. 492; Clements v. Elec. Co., 44 La. Ann. 692, 16 L. R. A. 43, and cases cited by the Geisman case supra; Winkleman v. K. C. Elec. Co., 85 S. W. 99, 110 Mo. App. 184; Ryan v. Railroad, 190 Mo. 621.

WOODSON, J.—This is an action which was instituted in the circuit court of the city of St. Louis, by the plaintiff, who is the widow of Ernest C. Von Trebra, against the defendant, to recover the sum of five thousand dollars damages for the alleged negligent killing of her husband in that city, on August 20, 1904.

The petition, omitting formal parts, is as follows:

''Now comes the plaintiff, by her attorneys, and for her cause of action herein avers:

"That the defendant is a corporation duly organized under the laws of the State of Missouri, and engaged in business in the city of St. Louis, and was at the time hereinafter mentioned engaged in manufacturing and furnishing electricity for light and power to its customers and consumers in said city. That the defendant owned, maintained and operated in said city for said purposes, at said times, a system of wires which were strung on poles erected in the streets, by which means the electric current was carried over, upon and through the streets of said city, from its plant to its various consumers; and had and maintained certain such wires on a pole belonging to the Kinloch Telephone Company, which stood on the south-east corner of Broadway and Dock streets in said city at the time hereinafter stated, and which said wires carried a high and dangerous voltage of electricity.

"That plaintiff was the lawful wife of Ernest C. Von Trebra hereinafter named, until his decease, as hereinafter shown, and is now his widow.

"That on the 20th day of August, 1904, the said Ernest C. Von Trebra, husband of plaintiff, then and there lawfully and of right, being engaged in the line of his duty as an employee of the Union Electric Light and Power Company, on and upon the said telephone pole on the southeast corner of Broadway and Dock streets aforesaid, came in contact with the said wires of defendant thereon, which had been allowed by defendant to become defective in insulation, and were in a dangerous condition, and was thereby shocked, burned, thrown to the ground and immediately killed.

"That by reason of the neglect of defendant, its servants and employees the said wires of defendant which thus caused the death of plaintiff's husband had been allowed to become defective in insulation and dangerous to human life; all of which was well known

to defendant, or in the exercise of due and proper attention and diligence in the care thereof should have been so known.

"That said deceased so came to his death because of the negligence and misconduct of defendant, and without his own fault or negligence, and because of said wrongful act, negligence and default of defendant the plaintiff has been damaged by the death of her said husband in the sum of five thousand dollars."

The answer consists of a general denial, and a plea of contributory negligence.

A trial was had before the court and jury; and the plaintiff introduced evidence tending to prove that at the time of the accident she was the wife of the deceased, and that he was a lineman and in the employ of the Union Electric Light and Power Company, and was engaged in the line of his duty. That a pole had been erected by the Kinloch Telephone Company at the corner of Broadway and Dock streets to support its wires used in the distribution of electric currents furnished to its customers. The defendant also used that pole for similar purposes. Four of its wires running north and south were attached to a cross-arm, ten feet long, fastened to that pole, two of which carried currents of electricity from the generating plant of the defendant, and the other two carried the return currents. That those currents of electricity were very strong, of high voltage and deadly, when man or beast came in contact with them. Those wires were strung to the two ends of the cross-arm. Above this arm of the defendant a new red arm had been fastened, which belonged to the Union Electric Light and Power Company, the company in whose employ was the deceased. This arm was about eighteen inches above the Laclede arm, and carried the wires of the Union Company, and attached in the same manner as were those of the Laclede wires. There were also attached to the same

pole, but on separate and higher arms, wires of the Kinloch Telephone Company. These arms were five or six in number. All arms of all the companies were attached to the north side of the pole, which was called the front side. On the other side, called the back, connections were run by the defendant company to adjoining property for the purpose of furnishing electricity for light, heat and power. These connections were made in the following manner: the wire carrying the current from the generating plant was cut, a new wire was attached, led across the back, that is, the south side, of the pole, and connected with the lamp and machinery to be furnished; and these lamps and machinery were then connected with the return wire, led across the same side of the pole and connected with the wire carrying the current of electricity back to the generating plant.

At the time of the injury, the wires of the defendant company carried about two thousand volts, and those of the Union Company carried about five hundred volts of current. Von Trebra knew those facts. Either current was sufficient to knock a man from the pole, if a good contact was had, and both would kill under favorable circumstances.

The defendant's wires were on the lowest cross-arm, and they were strung near the ends thereof for the purpose of leaving a space between them large enough to permit a person to pass engaged in the performance of his duties. In mounting a pole the linemen could ascend or descend on either side of the pole, but usually they did so on the opposite side to the lean. The pole in question leaned slightly to the north.

Without objection, plaintiff introduced evidence tending to prove that the kind of insulation used on defendant's wires, at the time and place of the injury, was not reasonably safe for a place of that character;

and that "circular loom," a better and safer insulation, could and might have been used by the defendant.

The deceased at the time of his injury had been repairing some of the wires of. the Union Company, and he had, in order to reach those wires, to pass the wires of the defendant company on his way up the pole. He was familiar with their location, the current they carried, and the danger incident to coming in contact with them.

The day of the accident was extremely hot, and deceased began work at eight o'clock in the morning, and was busily engaged up to 3:30, the time the accident occurred. The job was an emergency job, and all linemen were pushed. He mounted the pole in safety, and stood on the arm of the defendant, above its wires, in order to connect the wires of the Union Company on a superior arm. To do this he was requried to lean out from the pole about three feet, and reach the wires stretched at the end of the arm, of which there were three. He was engaged just prior to the accident in taking off the insulation from these three wires, cutting them, twisting the ends together, soldering them, and then taping them up.

The testimony of Walker, an eye-witness, is to the effect that he saw Von Trebra complete his work, gather up his tools, start down the pole, make "two or three steps down the pole from the arm he was working on," and reach a point directly over defendant's wires. "He never hit no wires when he fell off the pole, only the wires of the first arm," the defendant's wires, the wires on "the first one from the ground," when he, the witness, saw a flash and Von Trebra fell to the ground.

Both eye-witnesses, Walker and Miller, are positive he was coming down the pole. The defendant's wires were the only wires below the point at which Von Trebra had been working.

Miller testified that he also had been watching Von Trebra, and saw the fall. He testified that Von Trebra started from the second lowest cross-arm, that is, the one immediately above that of the defendant, took a step or two, and fell southward. This witness, however, saw no flash.

It appeared by the evidence of other witnesses that Von Trebra had been burned in two places, about eight inches apart, under the arm pit and over the heart. He was not dead, however, when picked up. One witness testified that his skull was fractured by contact with the cross-arms on the side-walk and that he was unconscious. An undertaker, however, testified that his skull was not fractured, but that his hair was burned. One of the witnesses who testified that the burns on Von Trebra's body were about eight or nine inches apart, testified also that the wires of defendant, which presumably caused the injury, are about ten inches apart. The wires which in fact eleven and one-half inches apart. By the injuries thus received Von Trebra was rendered unconscious and died a few hours thereafter, without regaining consciousness.

The defendant's evidence tended to prove that the wires of the defendant were insulated with the ordinary and required insulation used for over-head wires, and that the insulation was in good condition on the day of the accident. But the witness Ouane, who testified to the condition of the insulation, also testified that he did not go to the top of the pole, that he looked at the wires only from the ground, and that if there had been any defects on the top of the wire he could not have seen it from where he stood. He also said that he did not "notice them in particular," and that "they seemed to be all right."

Defendant's evidence also tended to show contri-

butory negligence on the part of the deceased, which contributed to his injury.

Defendant also introduced some expert evidence which tended to show that deceased could not have received his injuries in the manner claimed by plaintiff without having produced an effect upon an indicator maintained at defendant's plant. It also showed that no such effect was registered on the indicator. The plaintiff introduced other expert evidence in rebuttal tending to prove that the injury could have been so produced, and at the same time not affect the indicator.

The defendant demurred to plaintiff's evidence, which was, by the court, overruled, and it duly excepted. The court then instructed the jury, at the request of counsel for plaintiff and defendant, presenting their respective theories of the case to the jury. The jury found for the plaintiff, and assessed her damage at the sum of $5,000; and defendant has duly appealed the cause to this court.

I. Appellant's first assignment of error is lodged against the action of the trial court in refusing to give its instruction in the nature of a demurrer to the evidence.

It is elementary in this State that a demurrer admits every fact to be true which the evidence in the cause tends to prove, whether by direct testimony or by reasonable deductions to be drawn therefrom. According to this rule, the court properly refused that instruction, for the reason that there was evidence in the case which tended to prove that Von Trebra came in contact with the wires of defendant, and that when he did so a flash of light was seen at the point of contact, and that he was, at the same instant, seen to fall head-foremost from the pole to the ground, in an unconscious condition, thereby receiving severe injur-

ies, and that he died therefrom shortly thereafter. This evidence made out a prima-facie case on the part of the plaintiff, which entitled her to have the issues of fact submitted to the jury.

The settled law of this State regarding this class of injuries is, that it is not necessary for the plaintiff to prove, in order to recover, that the insulation was off of the wire, at the point of contact. All the law requires is that it be shown that the defective insulation caused the injury, without fault on his part, and that he was rightfully where he was. It is equally well-settled law of this State, that when injury or death is caused by coming in contact with such a wire, it is conclusively presumed that the insulation of the wire was defective. This rule was stated in the case of Geismann v. Missouri-Edison Electric Co., 173 Mo. 1. c. 678, by BURGESS, J., in the following language: "It follows from these authorities that it was defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wires at the point of contact or injury in this case, and to use the utmost care to keep them so, and the mere fact of the death of Geismann is *conclusive proof of the defect of the insulation and negligence* of the defendant, and as to whether he was guilty of contributory negligence or not was a question for the jury." The opinion in that case, after a most careful and exhaustive consideration of the legal propositions involved therein, and in which all of the authorities of this country bearing upon the questions were carefully reviewed, enunciated the law as above stated.

The case of Ryan v. Railroad, 190 Mo. 621, announces the same rule, and it is an equally well-considered case, and in which GANTT, J., cited the Geismann case, and, approvingly, quoted extensively therefrom. The same rule thus announced was followed in the case of Young v. Waters-Pierce Oil Co., 185 Mo. 634.

We are, therefore, of the opinion that the court committed no error in refusing to give defendant's intruction in the nature of a demurrer to the evidence.

II. It is next insisted by appellant that there was a total variance between the allegations of the petition and the evidence introduced. The negligence of appellant as charged in the petition is, that "defendant had allowed its wires to become defective in insulation and in a dangerous condition."

The appellant's first position is, that all the evidence which was admissible under that charge shows the wires were insulated with the ordinary and required insulation used for over-head wires; and that the evidence failed to show the insulation was defective in any manner; and, second, that negligence of another character, to-wit, in not providing a different kind of insulation from that used, was not provable under such charge.

We have disposed of the first contention in the first paragraph of this opinion, and we need not give it further consideration.

But we will consider the second.

It is true, the negligence complained of in the petition was that the defendant allowed its wires to become defective in insulation and in a dangerous condition. We are clearly of the opinion that the testimony of witnesses to the effect that "circular loom" insulation was better and safer than that used by appellant was not admissible under that allegation of the petition, had objections been made thereto. The record, however, fails to disclose any objection to the introduction of that evidence; and, consequently, appellant is in no position to insist that the admission of that evidence was error. Had timely objections been made, a wholly different condition would have confronted the trial court. Under the allegations of the petition the

court should have sustained the objection, in which event the plaintiff would have been compelled to take a non-suit, or she should have obtained leave to amend the petition in that regard, and proceed with the trial; but by failing to enter a timely objection to the introduction of that evidence, appellant waived the question of pleading, and will not afterwards be heard to complain of such variance. [Chouquette v. Railroad, 152 Mo. 257; Stewart v. Goodrich, 9 Mo. App. 125.]

It may be said that the rule just stated does not apply where there is a failure of proof of the cause of action charged in its entire scope and meaning; but it is sufficient to here state that there is not an entire failure of proof of the cause stated, because the real gravamen of the allegation is the ''dangerous condition'' of wires, and the defective insulation was but one of the many ways by which the appellant might have been negligent in permitting them to become dangerous to those employed about them. The plaintiff might have alleged in the first instance that their dangerous condition was caused by improper insulation, or that the insulation had become defective, or she might have charged both; and, if so, there was not a complete failure of proof, but only a variance which was waived by not making timely objection. [Ridenhour v. Railroad, 102 Mo. 270; Meyer v. Chambers, 68 Mo. 626; Wells v. Sharp, 57 Mo. 56; Turner v. Railroad, 51 Mo. l. c. 509; Chouquette v. Railroad, supra.]

For the reasons thus stated, we must decide this contention also against the appellant.

III. It is next contended by appellant that there is no evidence which tends to prove that Von Trebra was killed by its wires.

After a careful reading of all the evidence in the case, we have reached the conclusion that there is ample evidence in the record which tends to show that

appellant's wires did cause the death; and, in fact, if it were within the province of this court to pass upon the facts, we would have no hesitancy in holding that the defendant's wires were responsible for the death.

IV.   It is finally contended that the plaintiff was not entitled to recover for the reason that her husband was guilty of negligence which contributed directly to his injury and death.

If that contention is true in point of fact, then, unquestionably, she should not be permitted to recover, and the judgment should be reversed.   Contributory negligence is a defense which must not only be pleaded, but the burden of proving such negligence rests upon the defendant.   While it is true there is evidence in this record which might have warranted the jury in finding he was guilty of contributory negligence, yet they did not do so.   That was an issue which could be only determined by the jury.   It was properly submitted to them, and they found against appellant, which is conclusive upon this court.

We are, therefore, of the opinion that the judgment is for the right party, and should be affirmed. It is so ordered.

All concur.