Walter L. GLADDEN, Appellant,

v.

MISSOURI PUBLIC SERVICE COMPANY, a Corporation, Respondent.

No. 44418.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Clay C. Rogers, James W. Benjamin, Kansas City, for appellant. James E. Campbell, Robert L. Shirkey, Rogers, Field & Gentry, Kansas City, of counsel.

William H. Curtis, Karl F. Schmidt, John R. Gibson, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Patterson & Patterson, Kansas City, for respondent.

HYDE, Judge.

Action for $200,000 damages for personal injuries. Verdict and judgment for defendant and plaintiff has appealed. Plaintiff alleges error in Instructions 6, 7 and 8. Defendant contends that these instructions were proper and that plaintiff was not entitled to judgment in any event because no negligence of defendant was shown and because plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff was injured when he climbed a tree on a public highway (to catch a tame parakeet that got out of its cage) and fell after his hand touched one of defendant's electric wires. Defendant's electric line was on the east side of Woodson Road, a north and south highway through an unincorporated area of Jackson County. Plaintiff lived about 500 feet west of Woodson Road on the north side of 53rd Street, an east and west street that ended at its intersection with Woodson Road. There were three hackberry trees, on a bank within the highway right-of-way, on the east side of Woodson Road across from the 53rd Street intersection and defendant's wires went through these trees. These trees were very close together and when plaintiff's parakeet got out of his house it flew into the one farthest east. The trees were in full leaf, the casualty occurring October 9, 1950. They had last been trimmed around the wires by defendant in the spring of 1948. Plaintiff had resided in his home on 53rd Street for about three years; and the electric line on 53rd Street that served his home came from the Woodson Road line. Plaintiff was employed by the Westinghouse Electric Company, testing jet engines. He had previously served in the United States Navy and the Naval Air Corps and had worked as a civilian employee of the Army Air Corps. He had also been employed by aviation manufacturing companies and Trans World Airlines in mechanical work on airplanes. He was 39 years old at the time of his injury.

There were six wires on defendant's electric line through these trees. Three top wires, carrying $2400/4160$ volts, were parallel to each other and were 25 feet 7 inches above the ground at the foot of the trees and 29 feet 7 inches above the road level. These three top wires were attached to cross arms on the poles. There were also three lower verticle wires, attached to the sides of the poles. The two lower wires carried $120/240$ volts and the upper one was a neutral wire. The lowest wire was 21 feet 1 inch above the ground, the middle wire was up 21 feet 10 inches and the neutral wire was up 23 feet 3½ inches. The lowest point of the lowest wire between the two poles nearest the trees was 19 feet 10 inches above the ground. The lower wires were covered with insulating material but the upper wires were bare. Plaintiff saw the wires as he climbed the tree but said he did not know they were carrying electricity and had no knowledge

that bare wires carried electricity. He said he thought the uninsulated wire he saw "was a guy wire that they used between poles to pull them up tight together." Plaintiff said he never had seen guy wires parallel to the ground and did not look out to see if the wires were attached to cross arms. He was holding his hand above his head trying to coax the bird to get on his hand and he did not touch the wire intentionally but his thumb came in contact with the wire. He did not know how it happened. However, one of plaintiff's witnesses, who removed him in an ambulance, testified that plaintiff said "he either slipped or fell and came in contact with the wire."

Plaintiff further testified, as follows:

"Q. And did you exercise any precautions at all? Did you try to keep away from that wire when you were up there? A. I wasn't intentionally touching it, if that is what you mean. I wasn't intentionally touching no wires in that tree.

"Q. Why did you intend not to touch them? A. I wasn't intending to touch any wires that I seen.

"Q. It was your desire, then, not to come in contact with any of the wires? A. No, I had no intention to come in contact with none of them.

"Q. Well, did you want not to come in contact with any of the wires? A. Why, sure, I wouldn't, I wouldn't get next to none of them.

"Q. Why not? A. Well, you wouldn't get next to—what I mean, the insulated wires.

"Q. Well, did you intend or have any intention not to touch this uncovered wire? A. Yes, sir, I had no intention of touching it.

"Q. Why did you have no intention of touching it? A. Just because a wire is a wire. I just had no intention of touching it. * * *

"Q. You would not have touched it intentionally? A. No.

"Q. Why not? A. Well, I wouldn't know the reason for that.

"Q. I mean, if you would not have touched it intentionally, you have some reason for not wanting to touch it intentionally. A. Well, it could have been any kind of a wire there, as far as that, what I mean is, a wire on the telephone pole, I wasn't going to touch any of them intentionally.

"Q. You wouldn't touch any wire up in the air intentionally, is that right? A. That is right."

Plaintiff's witness Arthur C. Kirkwood, a consulting engineer, with experience in planning, supervising and constructing electric lines, testified that the construction of defendant's line was substandard and failed to provide adequate safety to the public. He said the condition there would be hazardous to anyone entering the trees and that the presence of persons in all trees should be anticipated. He further stated that it was a common practice of electrical companies in Jackson County to run uncovered electric wires through trees on highways. This was also stated by both the present and preceding Highway Engineer of Jackson County. Mr. Kirkwood said there were self-supporting aerial cables which would effectively prevent the escape of electricity to any person who might come in contact with them, but they cost several times as much as ordinary wire. He further testified that the wires could be isolated by elevating them on longer poles or that trees through which they passed could be trimmed so that a person climbing the trees would not reach one of the wires carrying high voltage. His opinion was that failure to so trim trees through which wires passed was sub-standard construction. He did not recommend raising the poles in this particular instance. Pictures in evidence show the wires were close to the branches and foliage. Witnesses who went to aid of plaintiff said the wires in the trees could be seen from the ground.

Defendant's evidence showed that defendant was required by the Missouri Pub-

lic Service Commission to construct all electric lines "to conform to the specific rules and regulations contained in the National Electric Safety Code issued by the United States Bureau of Standards." The Commission also required defendant to maintain and operate its lines "in a reasonably safe and adequate manner so as not to endanger the safety of the public." The clearance of wires along roads, required by the code in rural districts, was 18 feet for lines of 750 to 15,000 volts. In cities, along streets or alleys, the required clearance was 20 feet above the ground. For less than 750 volts, the required clearances were 15 feet and 18 feet respectively. These were minimum heights. Defendant's supervisor, Earl D. Dryer, testified, as to the purpose of tree trimming, as follows: "It is to maintain clearance of the trees from the wires so that wind storms and so forth won't blow the branches into the wires and therefore blow the wires together that would cause them to short out. * * * prevent troubles on our circuits; in other words, maintain service to our customers." A Commission engineer, J. R. Gilcrest, said the purpose of covering wires was to protect low voltage wires coming in contact from arcing, burning down or shorting out the system; and that he did not know of any covered wire "that is guaranteed by the manufacturer or anyone against personal injury through contact with that wire when it is energized with high voltage." Defendant had other testimony that covering does not protect a person coming in contact with a high voltage wire; that it tends to reduce but does not eliminate the shock hazard; and that covered aerial cables mainly were used through trees which were not permitted to be trimmed. Defendant's evidence also was that its Woodson Road line was standard and not sub-standard construction.

Defendant contends that, as a matter of law, defendant did not violate any duty of care owed by it to plaintiff and that its construction and maintenance of its wires did not proximately cause his injuries. It bases this contention upon the theory that defendant, even in the exercise of the highest degree of care could not have anticipated the presence of adults in the tree where they would come in contact with its wires, citing such cases as Howard v. St. Joseph Transmission Co., 316 Mo. 317, 289 S.W. 597, 49 A.L.R. 1034; Celner v. Central Illinois Electric & Gas Co., 343 Ill.App. 310, 99 N.E.2d 214; and Empire District Electric Co. v. Harris, 8 Cir., 82 F.2d 48. In the Howard case [316 Mo. 317, 289 S.W. 598], a judgment of dismissal was affirmed, on a petition seeking to extend the attractive nuisance doctrine to " 'an unattractive dangerous instrumentality in or near an attractive environment.' " Defendant's wires were near a creek where boys engaged in fishing and swimming. The plaintiff was injured when he climbed defendant's pole to release a fish hook and line from its wires and came in contact with a charged wire. This Court noted there were no convenient pegs or ladder on the side of the pole to facilitate climbing and distinguished the situation from cases of climbing trees through which electric wires passed, saying, Howard v. St. Joseph Transmission Co., 289 S.W., loc. cit. 600, a company is required to anticipate the presence of boys in trees. However, this was not a ruling that the duty to insulate or isolate wires through trees is owed only to minors and that a company is never required to anticipate the presence of an adult in such a tree. Of course the issues, especially as to contributory negligence, are different in the case of an adult. In the Harris case, the plaintiff climbed a tower, to which defendant's wires were attached, located on its own private property. The Court held, 82 F.2d, loc. cit. 51, no negligence was shown, saying: "It is not possible for us to conclude that appellant should, in the exercise of even a high degree of care, have anticipated that any child large and strong enough to reach these wires would ever attempt to go where they were."

The Celner case was decided on the ground that as a matter of law the plaintiff "failed to establish the fact that he was in the exercise of due care and caution for his own safety", 99 N.E.2d, loc. cit. 218; and also "failed to establish that the

defendant's negligence was the proximate cause of his injury." The latter ruling was apparently on the theory that it could not have been anticipated "a young man with the knowledge of electricity, and the danger connected therewith would climb a tree at least thirty feet in the air, and come in contact with and be burned by one of the wires." In that case, the plaintiff, 18 years old, climbed a walnut tree near the boundary of a highway to shake down nuts. However, the Celner case was not based on the duty to exercise the highest degree of care to keep electric wires in such condition as to prevent injury to others who lawfully may be in close proximity to them, which is the rule in this State. Lebow v. Missouri Public Service Co., Mo., 270 S.W.2d 713 and cases cited. Furthermore, a duty to insulate wires has often been stated by this Court. 18 Am.Jur. 485, Sec. 93; 29 C.J.S., Electricity, § 44, p. 589; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S.W. 654; Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S.W. 1; Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, 253 S.W. 233. If it is true, as indicated by defendant's evidence, that it is impossible to fully insulate wires carrying such high voltage as these, then certainly the exercise of the highest degree of care requires that such wires be so isolated that they will not be likely to cause injury to persons in places where they may lawfully be and may be reasonably expected. Of course, one way this may be done is to place them at a height where persons are not likely to come in contact with them; and another way is to trim trees so the wires will not be close to the branches. These wires were above the heights stated in the National Safety Code but, as defendant recognizes, these are minimum standards and do not establish the complete duty of defendant under all circumstances. We take a dim view of defendant's testimony that the real purpose of trimming trees is to prevent loss of current. We think that the exercise of the highest degree of care also requires trimming around highly charged wires to isolate them so as to lessen the opportunity of persons to come in contact with them, wherever their presence may reasonably be expected. While the tree in this case was not a nut or fruit tree (in which the reason to anticipate persons would be greater), nevertheless we do not think we can hold as a matter of law that there was no reasonable basis to anticipate that an adult would be likely to be in a tree situated as this one was. On the contrary, we think this was a jury question. Of course, there would be more reason to expect the presence of children but an adult might go into such a tree to retrieve other property than a pet parakeet. Plaintiff suggests a hat blown there by the wind or a child's kite or toy airplane that might lodge there. It was not a difficult tree to climb and it had not been trimmed for 2½ years. It was on a much traveled highway in a populous area. The pictures show branches very close to the wires. We hold there was substantial evidence of failure to exercise the highest degree of care.

■ As to contributory negligence of plaintiff, if he knew these wires were electric wires we would have to hold that he was guilty of contributory negligence as a matter of law in getting so close to them. In the Celner case, the evidence as to knowledge is not stated but the court apparently either assumed that plaintiff must have known it from the appearance of the line on both sides of the tree, 99 N.E.2d, loc. cit. 217, or considered that plaintiff had to prove his lack of knowledge. Freedom from negligence must be shown as a part of plaintiff's case in Illinois, Redick v. Thomas Auto Sales, Mo., 273 S.W.2d 228. While, as hereinafter stated, we think there was ample evidence from which the jury could find that plaintiff knew these were electric wires we cannot hold it was conclusively established that he did know it. From the type of construction shown in the pictures in this case, we cannot say as a matter of law that plaintiff must have known that the wires were electric wires, although the jury could have reasonably so found from all the circumstances shown by the evidence. As in Lebow v. Missouri Public Service Co., Mo., 270 S.W.2d 713 and Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, plaintiff did not inten-

tionally touch the wire. Therefore, we hold that contributory negligence was an issue for the jury in this case.

Plaintiff vigorously assails Instruction 6 making the following criticisms: (a) That the first paragraph erroneously excludes from the jury's consideration the fact and character of plaintiff's injury; (b) That the first part of the second paragraph constituted a positive misdirection on the standard of care imposed on defendant and erroneously singled out and gave undue prominence to the Public Service Commission regulations and the National Electrical Safety Code requirements which were only minimum standards; (c) That the instruction conflicted with Instruction 1 and was not cured by the later conjunctive submission; and (d) that the last italicized part of the last paragraph concerning anticipation of "adults such as plaintiff" was erroneous. These contentions will be considered in this order.

Instruction 6 (with parts plaintiff claims erroneous italicized) was as follows: "You are instructed that defendant, Missouri Public Service Company, cannot be held liable by the mere fact that Walter L. Gladden came into contact with an electric wire owned and maintained by defendant and *the mere fact that plaintiff was injured at the place described in evidence, if so, does not in and of itself entitle plaintiff to a verdict.*

"The court instructs the jury that if you find and believe from the evidence that on the 9th day of October, 1950, the defendant, Missouri Public Service Company, was engaged in the business of manufacturing and supplying electricity to its customers in Jackson County, Missouri, and that in so doing that it maintained, for the purpose of distributing said current to its customers, certain poles and wires in the vicinity of 53rd Street and Woodson Road in Jackson County, Missouri, if so, and if you further find and believe from the evidence that said lines at the time and place referred to in the evidence were *constructed at a height in compliance with the requirements of the Missouri Public Service Commission*

*and the National Electrical Safety Code adopted by the National Bureau of Standards of the Department of Commerce,* if you so find, and in a height and manner that the defendant, Missouri Public Service Company, in the exercise of the highest degree of care, should not reasonably *have anticipated that adults such as plaintiff, Walter L. Gladden, would come into contact with said wires,* if you so find, then your verdict must be for the defendant. You are further instructed that the word anticipated means reasonable probability and not mere possibility."

The Court also gave Instruction 5 which was as follows: "The jury is instructed that, in respect to Instruction No. 6 in which the issue of whether or not the wires of the defendant at 53rd and Woodson Road were constructed at a height in compliance with the minimum requirements of the Missouri Public Service Commission and the National Electrical Safety Code adopted by the National Bureau of Standards of the Department of Commerce, as submitted in said instruction, you are instructed that if you find and believe from the evidence that the minimum standards of height set forth in the National Electrical Safety Code did not, in the circumstances shown in evidence, constitute the exercise of the highest degree of care, as that term is defined in these instructions, and that the defendant was negligent as submitted in Instruction No. 1, then, and in those circumstances, you are instructed that the mere fact that defendant's wires were erected and constructed at the heights and clearances of the minimum standards stated in said Electrical Code, constitutes no defense whatever in this action."

The Court also in Instruction 1 instructed the jury concerning defendant's duty as follows: "The court instructs the jury that, under the law, it was the duty of the defendant corporation to exercise the highest degree of care in the installation, maintenance and use of the said power lines carrying a dangerous current of electricity, and to use every protection and precaution reasonably available to so maintain its aforesaid wires as to prevent harm and

danger to all members of the general public whose business or pleasure might reasonably be anticipated to cause them to use the highway and right-of-way and the trees growing thereon for any lawful purpose while in the exercise of ordinary care for their own safety, and who might, in the course of such use of the highway and right-of-way and trees growing thereon, by accident or inadvertence, and without apprehending the danger thereof, come or be brought into dangerous proximity and contact with said wires and be injured as a direct result thereof. Failure in respect to such duty, owed by the defendant corporation to all such members of the public, if it did so fail, would be negligence as that term is used in these instructions and as applied to the defendant corporation." Instruction 1, after hypothesizing the occurrence of plaintiff's injury, authorized a verdict for plaintiff if the jury "find and believe from the evidence that the defendant corporation, in the exercise of the highest degree of care could and should have insulated said wires, so as to have prevented the escape of electricity therefrom, and in the exercise of such care could and should have elevated and insulated said wires from the trees, so as to have made it reasonably safe for persons who might reasonably be expected to be in said trees, if so, on any lawful purpose, if so, and if you find and believe from the evidence that the defendant negligently and carelessly failed to do the aforesaid acts, if it did so fail, an that, as a direct result of such negligence, if any, the plaintiff, Walter Gladden, was directly shocked etc."

■ (a) Plaintiff says that, from the fact that a person receives an electric shock, a presumption arises that the wire was insufficiently insulated, citing Von Trebra v. Laclede Gaslight Co., 209 Mo. 648, 108 S.W. 559; and Geismann v. Missouri Edison Electric Co., 173 Mo. 654, 73 S.W. 654. Plaintiff therefore claims that the italicized statement in the first paragraph of Instruction 6 would confuse the jury and cause them to believe they were not to consider plaintiff's injuries in connection with the issue of defendant's negligence. Plain-

tiff further says the fact that he had burns on his right thumb which touched the wire and on his left ankle which was against the tree and the character and extent of these burns was material in determining whether or not defendant was negligent; and that the first paragraph of Instruction 6 deprived him of the right to have the jury consider these matters, citing Dill v. Dallas County Farmers' Exchange, Mo., 267 S.W. 2d 677; Orris v. Chicago, R. I. & P. R. Co., 279 Mo. 1, 214 S.W. 124; Myers v. City of Independence, Mo., 189 S.W. 816. Plaintiff also says this was misleading because it caused the jury to leave out of consideration facts bearing on the issue of negligence such as failure to insulate, failure to isolate and failure to warn; and that the jury would also be mislead on the issue of contributory negligence by excluding from their consideration the nature and character of plaintiff's injuries, citing Jones v. Kansas City, Mo., 243 S.W.2d 318, 321. (Which in fact approved an instruction like this one.) However, in this case, it was admitted that the wire plaintiff touched was uninsulated; none of the three top wires were. Furthermore, the wording of Instruction 6 is substantially different from those in the cases cited. The clause "does not in and of itself entitle plaintiff to a verdict" prevents it from having the effect claimed. This exact language was approved in Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 163 S.W.2d 548; see also Gardner v. Turk, 343 Mo. 899, 123 S.W.2d 158; Palmer v. Hygrade Water & Soda Co., 236 Mo.App. 247, 151 S.W.2d 548; Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449; Steinmetz v. Nichols, 352 Mo. 1047, 180 S.W.2d 712; LeGrand v. U-Drive-It Co., Mo., 247 S.W.2d 706. The first paragraph of Instruction 6 did not say that any act or injury was no evidence whatever of defendant's negligence as did the instructions in the Dill and Orris cases (held error in the specific fact situations involved) or tell them to disregard plaintiff's injuries as did the refused instruction in the Myers case. The cases say that this is in the nature of a cautionary instruction and is usually within the discretion of the trial court. Of course, de-

fendant was not liable as an insurer and the first paragraph of Instruction 6 really told the jury no more than that. We cannot hold there was any abuse of discretion in giving it in this case.

(b) Plaintiff says the effect of the reference to the height requirements of the Public Service Commission and the Safety Code was to tell the jury that by compliance therewith defendant had discharged its duty. This would, of course, be a positive misdirection, as plaintiff contends, but we do not think the instruction can reasonably be so construed both because there are no such words in the instruction and because of the conjunctive submission of the clause following it which certainly told the jury they were required to find more than such compliance. If this was indefinite or unclear it was unquestionably made clear and definite by Instruction 5 which said these were minimum standards and no defense if they did not constitute the highest degree of care under the circumstances. Plaintiff makes the further contention that the instruction was argumentative and singled out and gave undue prominence to compliance with Commission and Safety Code requirements, citing Spalding v. Robertson, 357 Mo. 37, 206 S.W.2d 517; Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43; Lithegner v. City of St. Louis, Mo.App., 125 S.W.2d 925; Zumwalt v. Chicago & Alton R. Co., Mo., 266 S.W. 717. However, the instruction did not purport to preclude the jury from a consideration of all of the evidence, see Roth v. Roth, Mo.App., 142 S.W.2d 818; nor did it direct a verdict upon the fact singled out alone as was true in the Lithegner and Zumwalt cases, both of which only passed on the propriety of refusing instructions. Moreover, in those cases, the facts singled out were disputed whereas here compliance with the Commission and Code height standards was shown by plaintiff's own evidence. Furthermore, even if it was not necessary to require a finding of compliance with these requirements, we think, in view of Instruction 5, this submission could not have been prejudicial because it was very clearly stated that these were only minimum standards; that defendant was required to exercise the highest degree of care under the circumstances; and that it had to meet the standard of care submitted in Instruction 1 to be free from negligence. Under both instructions, considered together, what this submission meant was that defendant had to comply with both the Commission and Code requirements and whatever else was necessary to constitute the highest degree of care.

(c) Plaintiff's contention that Instruction 6 was in conflict with Instruction 1 (and not cured by the conjunctive submission therein) is based upon his erroneous assumption that it told the jury that defendant discharged its duty and was entitled to a verdict solely upon compliance with the height requirements of the Commission and the Code. As we have heretofore pointed out, this is not a correct construction of this instruction and it did not authorize a verdict for defendant unless there was a finding both that there was such compliance *and* that its wires were also constructed "in a height and manner" (above that minimum) that "in the exercise of the highest degree of care" defendant "should not reasonably have anticipated that adults * * * would come in contact with said wires." This is not a case where an improper statement of the law was joined conjunctively with a correct general statement, like Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W. 2d 105, cited by plaintiff, because defendant in any event was required to comply with these minimum standards to be in the exercise of the highest degree of care. Thus both of these conjunctive submissions were proper although a finding of the first was unnecessary because shown by plaintiff's evidence. Defendant says this instruction submits the converse of an essential element of Instruction 1, namely that defendant did exercise the highest degree of care in anticipating contact with its wires and placing them to avoid it. While the instruction is not stated as an exact converse, it is in the nature of a converse submission of the same proposition; and, therefore, plain-

tiff's contention that it was in conflict with Instruction 1 cannot be sustained.

(d) Plaintiff's contention that it was erroneous to tell the jury that defendant would not be liable if it so placed its wires that it "should not reasonably have anticipated that adults such as Walter L. Gladden would come in contact with its wires" is based on cases holding that it is not necessary to liability that a defendant should have anticipated the exact injury which did occur or the exact manner in which it occurred, citing Lebow v. Missouri Public Service Co., Mo., 270 S.W.2d 713; Miller v. Brunson Construction Co., Mo., 250 S.W.2d 958; Hudson v. Union Electric Light & Power Co., Mo.App., 234 S.W. 869; Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, 120 S.W. 766; Harrison v. Kansas City Electric Light Co., 195 Mo. 606, 93 S.W. 951, 7 L.R.A.,N.S., 293 and others. However, these cases are not in point because Instruction 6 does not say anything about anticipation of the exact injury or the exact manner in which it occurred or even refer to either. What it does refer to is anticipation of the presence of adults where they would come in contact with its wires. Instruction 1 in stating defendant's duty placed it on the ground of preventing harm to those "whose business or pleasure might reasonably be anticipated to cause them" to use trees "for any lawful purpose while in the exercise of ordinary care for their own safety." Instruction 1 also required a finding that defendant failed to elevate and insulate its wires "so as to have made it reasonably safe for persons who might reasonably be expected to be in said trees." Thus this matter of "anticipation" was recognized by plaintiff and emphasized in his main instruction as the basis of a finding of negligence. "Anticipation" or "foreseeability" is an essential element in determining negligence. Restatement of Torts, Sec. 289. In comment b, Sec. 289, it is stated: "In order that an act may be negligent it is necessary that the actor should realize that it involves a risk of causing harm to some interest of another, such as the interest in bodily security, which is protected against

unintended invasion. But this of itself is not sufficient to make the act negligent. Not only must the act involve a risk which the actor realizes or should realize, but the risk which is realized or should be realized must be unreasonable." Likewise, the traits of well-defined classes of human beings are material to the determination of whether an act is negligent. In comment j, Sec. 289, it is said: "Thus a motorist driving along a street, upon the sidewalks of which children are playing, is required to take into account the likelihood that one of them may suddenly dart into the street and must keep his car under a control which would not be necessary if the only persons on the sidewalk were adults."

In Karr v. Chicago, R. I. & P. R. Co., 341 Mo. 536, 108 S.W.2d 44, 49, we said (omitting citations): "It is not sufficient for complainant to show that he has been injured by the failure of another to perform a duty or obligation unless that duty or obligation was one owing to complainant. * * * Nor it is 'sufficient to show that the defendant owed to another person or class of persons a duty which had it been performed would have prevented the injury complained of' * * *, and the 'mere fact that the act or omission complained of involved a breach of duty owed to some person or persons other than the complaining party does not give the latter any right of action.' * * * Clearly to be actionable negligence the injury complained of must result from the violation of a legal duty owed by defendant to the injured party." In view of these principles, we do not think it was improper, in determining the issue of defendant's negligence under the circumstances of this case, to have the jury consider the matter of foreseeability of adults coming in contact with its wires as they were placed through the tree. Certainly, under the authorities, an adult cannot recover by showing a violation of a duty that would be owed only to small children. We do not think this language can reasonably be construed as being limited to plaintiff himself or his exact injury or the exact manner in which it was sustained. Furthermore, while these matters

could have been stated more clearly, considering the whole submission we think the matter was fairly presented to the jury. Instruction 6 does not misstate the law and the trial court did not find any of the instructions misleading. We have often said: "When, as here, the instructions, read and construed as a whole, contain a complete exposition of the law necessary to guide the jury in arriving at a verdict and are not contradictory, the verdict will be sustained even though one or more of them, separately considered, would have been misleading had it or they not been supplemented or explained by the others." Nelson v. Tayon, Mo., 265 S.W.2d 409, 414, 415. We, therefore, hold there was no prejudicial error in giving Instruction 6.

Instructions 7 and 8 submitted plaintiff's contributory negligence. Plaintiff says it was not proper to submit this issue because there was no evidence that plaintiff knew the wire was charged with electricity. We think there was abundant substantial circumstantial evidence to warrant such a finding and certainly a finding that in the exercise of ordinary care plaintiff should have known it. While we have determined that we could not hold this as a matter of law, undoubtedly such knowledge was a reasonable inference from plaintiff's cross-examination hereinabove set out and the further facts shown in evidence that plaintiff had lived nearby in plain view of the line for about three years; that the wires that carried electricity to his house came off of this line; and that plaintiff's service and employment experience had been such as at least to make it reasonable to find that he should have recognized what it was. Certainly the jury was not required to believe what plaintiff said about lack of knowledge. As to Instruction 7, plaintiff further says it was confusing and misleading because it referred to danger of contact between his body and the wire and permitting his body to come in contact with it, while requiring a finding that his hand came in contact with it. This seems to us hypercritical and without merit; and we cannot see how the jury could be confused or mislead by it. Furthermore, Instruction 1 hypothesized that, on plaintiff's contact with the wire, "a current of electricity passed into his body", without mentioning his hand. As to Instruction 8 plaintiff says it failed to submit any facts from which the jury could find him negligent "in permitting himself to slip"; and says that mere slipping in and of itself is not negligence. However, the instruction required a finding or more than mere slipping. It required a finding that plaintiff saw the wire in close proximity to him and, thereafter, slipped and that he was negligent "in climbing said tree in close proximity to said wire and in permitting himself to slip." If plaintiff thought it was necessary to have a more detailed instruction he should have requested it. Hooper v. Conrad, Mo., 260 S.W.2d 496. As to the further contention that there was no evidence to support the submission that he was negligent in permitting himself to slip, it is sufficient to say there was ample evidence in plaintiff's own testimony and the surrounding circumstances, for the jury to find that he was negligent in climbing so high in the tree in close proximity to the wire and engaging in such activity therein permitting him to slip. From the pictures of the tree, showing the proportionate size of the limbs, together with plaintiff's account of his actions in the tree, the jury could reasonably make such a finding. We hold there was no prejudicial error in giving Instructions 7 and 8.

The judgment is affirmed.

All concur.